**UNITED STATES of America**

v.

**Stephen BECKER a/k/a/ "Steven Fox" a/k/a/ "Dr. Fox".**

**Appeal of Stephen BECKER.**

**No. 89–1399.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Dec. 11, 1989.

Decided Dec. 19, 1989.

Thomas M. Dawson, Leavenworth, Kan., for appellant.

Michael M. Baylson, Walter S. Batty, Jr., Ewald Zittlau, U.S. Attys. Office, Philadelphia, Pa., for appellee.

Before SLOVITER, GREENBERG and SEITZ, Circuit Judges.

OPINION OF THE COURT

SLOVITER, Circuit Judge.

I.

Appellant Steven Becker appeals from his conviction, following a bench trial, of conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. § 846, of violating the Travel Act, 18 U.S.C. § 1952, of engaging in a continuing criminal enterprise (CCE) in violation of 21 U.S.C. § 848, and of aiding and abetting in violation of 18 U.S.C. § 2. Becker asserts first that there was insufficient evidence to support his CCE conviction because the evidence did not support a finding that he managed, controlled, or organized the requisite five people. He also argues that the Pennsylvania prosecution was barred by an earlier West Virginia conviction and that the indictments against him in four jurisdictions comprise a piecemeal and fragmentary prosecution that has had the effect of harassing him financially and emotionally.

Becker does not contest that he was involved in a large scale drug operation that involved smuggling marijuana into the country and then reselling it. Evidence presented at the trial in the Eastern District of Pennsylvania showed that several large scale sales, involving over 1,000 pounds of marijuana each, took place in Pennsylvania, New Jersey, and Massachusetts between 1981 and 1985. The indictment alleges and the testimony shows that in furtherance of his sales, Becker rented a farmhouse in Massachusetts and also tried to interest some of the participants in these

transactions in purchasing a piece of property in Oregon with a deepwater dock to facilitate the smuggling of Colombian marijuana into the country.

Becker was convicted in 1989 in the district court of West Virginia on charges of conspiracy to manufacture and distribute marijuana in violation of 21 U.S.C. § 841 and 21 U.S.C. § 846 which involved his attempt to grow marijuana on a farm in West Virginia. He was sentenced to five years on that conviction. He has also been indicted for federal offenses in Oregon and Massachusetts, and those matters are pending.[1]

## II.

We turn first to Becker's contention that the evidence was insufficient to prove that there were five or more persons with respect to whom Becker occupied a position of organizer, supervisor or manager as required under the CCE statute. He concedes that the trial court "would be accurate" in naming four persons who were in that position, *see* Brief for Appellant at 23, but argues that the court was erroneous in concluding that Cangro, Hanman, Camel and Demaio were organized, supervised or managed by him.

■ Becker argues that none of the witnesses for the government testified that they considered themselves as employed or working for him or controlled by him. Of course, the witness' own characterization of the relationship is not determinative for our purposes. Camel testified that Becker provided "help, guidance, advice." App. at 165. Moreover Becker provided large quantities of marijuana to Cangro and Camel without requiring immediate payment, and was satisfied to be paid as they sold portions of the substance. A consignment arrangement has been held to give the provider of the substance the necessary supervisory control of the participants. *See United States v. Apodaca*, 843 F.2d 421, 426–27 (10th Cir.) *cert. denied*, ——

U.S. ——, 109 S.Ct. 325, 102 L.Ed.2d 342 (1988).

Even if the relationship between none of the four individuals identified by the trial court and Becker was sufficient to make Becker that individual's "supervisor" or "manager," the necessary relationship can be found if Becker can be fairly viewed as the "organizer" of the transactions. *See United States v. Aguilar*, 843 F.2d 155, 157–58 (3d Cir.) *cert. denied*, —— U.S. ——, 109 S.Ct. 305, 102 L.Ed.2d 324 (1988). The testimony fully supports a finding that Becker organized the various marijuana transactions. Accordingly we reject Becker's contention that there was insufficient evidence to support his conviction for engaging in a continuing criminal enterprise.

## III.

■ Becker's remaining claims on appeal arise from the same underlying contention; he alleges that one conspiracy existed, that the government has split that conspiracy into subsets, and that it is proceeding to prosecute him separately for each individual subset. The government responds first by arguing that Becker has waived his double jeopardy claim by raising it only after the trial. Becker did not contend until his sentencing that the Pennsylvania conviction was barred by the Double Jeopardy Clause of the Fifth Amendment. A double jeopardy claim may be waived if not raised at trial. *See* 1 Wright, Federal Practice and Procedure, § 193 (2d ed. 1982) (Double jeopardy falls into the class of affirmative defenses about which F.R.Cr.P. 12 is silent; a defendant can raise it before or during the trial, but if it is not raised, it is waived.); M. Rhodes, Orfield's Criminal Procedure under the Federal Rules (2d ed. 1985) (same); *United States v. Bascaro*, 742 F.2d 1335, 1365 (11th Cir.1984) (defendant waived double jeopardy argument because not raised until appeal); *United States v. Perez*, 565 F.2d 1227, 1232 (2d Cir.1977) ("The constitutional immunity from double jeopardy is a personal right

---

1. In Massachusetts, Becker is indicted for a RICO violation, 18 U.S.C. § 1962(c). In Oregon Becker is indicted for violations of 18 U.S.C.

§ 2; 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 952(a), 960.

which, if not affirmatively pleaded by the defendant at the time of the trial, will be regarded as waived."). Becker's failure to raise his double jeopardy claim earlier constitutes an adequate basis to reject his double jeopardy claim. Nonetheless, we reach the merits of his claim that the conspiracy charged in the West Virginia indictment was part of the conspiracy charged in the Pennsylvania indictment because that analysis also underlies his separate contention that the separate criminal prosecutions are harassing.

■ The government agrees that the double jeopardy clause prohibits it from splitting one conspiracy into several prosecutions. *See Braverman v. United States,* 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942). For purposes of our review, we may look only to the conviction on appeal and the West Virginia conviction which preceded it. Although the general test used to determine whether the second prosecution is barred is the same evidence test, *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (test for whether the two offenses are the same is whether each provision requires proof of a fact that the other does not), this court applies the "totality of the circumstances" test when the charge involves a conspiracy. *See United States v. Liotard,* 817 F.2d 1074, 1078 (3d Cir.1987). In *Liotard,* the criteria that the court examined included: (1) the locus criminis of the two conspiracies; (2) the degree of temporal overlap between the two conspiracies; (3) the overlap of personnel between the two conspiracies; (4) the overt acts charged and the role played by the defendant in the two indictments. *Id.* at 1078.

■ Applying the *Liotard* test to this case, we conclude that the Pennsylvania and West Virginia indictments involved two separate conspiracies. The transactions alleged in the two indictments took place in separate states. *See United States v. Bendis,* 681 F.2d 561 (9th Cir.1982) (two conspiracies existed, in part, because first conspiracy implicated a part of the world that the second one did not) *cert. denied,* 459 U.S. 973, 103 S.Ct. 306, 74 L.Ed.2d 286

(1982). The West Virginia conspiracy took place entirely in West Virginia which was the locus of the seed and was where the plants were grown. There was no distribution of the drugs because the plants were discovered before they were cultivated. The Pennsylvania conspiracy, on the other hand, was much broader. It covered a locus of several states, but not West Virginia.

The Pennsylvania indictment alleged a time span from "in or about 1981" to November 13, 1987 whereas the West Virginia indictment covered the limited period from approximately the Spring of 1981 until July 27, 1981. Just because the time periods of the two conspiracies overlapped does not indicate that only one conspiracy existed. *See United States v. Daniels,* 857 F.2d 1392 (10th Cir.1988) (second conspiracy completely subsumed in time by first conspiracy).

■ In any event, a party can be involved in more than one conspiracy at one time. Although there was some overlap between the personnel in the two conspiracies, this is also not indicative of only one conspiracy. Because Becker's family was involved in his activities, it is not surprising that he would involve them in all his dealings, not just in some. Finally, no overt acts that were alleged in the Pennsylvania indictment overlap with the conspiracy in West Virginia.

The critical determination is whether one agreement existed. The object of the West Virginia conspiracy, which concerned growing marijuana, was "to manufacture and possess with intent to distribute." App. at 248. The Pennsylvania conspiracy, on the other hand, concerned distributing, selling and buying marijuana and which involved smuggling it into the country and finding locations where it could be stored. These were two different objectives and agreements, and hence two conspiracies.

The Seventh Circuit drew a similar distinction recently. In *United States v. Chiattello,* 804 F.2d 415 (7th Cir.1986), the court held there were two conspiracies where the first indictment was for a conspiracy to buy marijuana in Mississippi and

the second involved a plan to smuggle marijuana from Colombia and distribute it in Indiana. Chiattello tried to claim, much as Becker does, that one conspiracy existed to get marijuana "from whatever source" to distribute. *Id.* at 419. The argument failed. As the Seventh Circuit noted in an earlier case, "the guarantee against double jeopardy does not insulate a criminal for subsequent offenses merely because he chooses to continue committing the same type of crime." *United State v. West,* 670 F.2d 675, 681 (7th Cir.1982). In *West,* the court looked at the fact that the two conspiracies did not depend on each other for success and that they had different ultimate objectives. *See also United States v. MacDougall,* 790 F.2d 1135, 1147 (4th Cir. 1986) (fact that defendant has already been charged with a statutory violation "does not prevent the government from establishing the existence of the same type of crime"). We conclude that two conspiracies existed for double jeopardy purposes.

In light of this conclusion, we see no need to use our supervisory power to vacate the Pennsylvania conviction, as Becker asks us to do. *See, e.g., United States v. Guido,* 597 F.2d 194 (9th Cir.1979) (court used its supervisory power over the administration of criminal justice to prevent two trials prosecuting the same conspiracy). The government was not precluded from prosecuting the two conspiracies separately. Becker also points to the Oregon and Massachusetts indictments. These have not yet proceeded to trial. If Becker wishes to challenge those proceedings on double jeopardy or harassment grounds, he will undoubtedly have an opportunity to raise these claims in those fora.

### IV.

For the reasons set forth above, we will affirm the judgment of conviction and sentence entered by the district court.