

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-14-2006

# USA v. Patterson

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3380

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Patterson" (2006). *2006 Decisions.* Paper 1441.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1441

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

Nos. 04-3380

———

UNITED STATES OF AMERICA

v.

JAMES PATTERSON,
a/k/a
GIOVANNI,
a/k/a
GIOVANNI LOVE,
a/k/a
GL

James Patterson,

Appellant

———

ON APPEAL FROM FINAL JUDGMENT OF THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 02-172-02)

District Judge: The Honorable Stewart Dalzell

———

Argued on March 2, 2006.

Before: SLOVITER and FUENTES, <u>Circuit Judges</u>, and RESTANI, <u>Judge</u>[*]

———

[*] Honorable Jane A. Restani, Chief Judge of the United States Court of International
Trade, sitting by designation.

(Filed:   March 14, 2006)

Christian J. Hoey (Argued)
Rubino & Hoey, LLC
50 Darby Road
Paoli, PA 19301


Richard A. Lloret (Argued)
Patrick L. Meehan
Robert A. Zaumer
Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

_____

OPINION OF THE COURT
_____

Fuentes, Circuit Judge.

James Patterson ("Patterson") appeals his conviction in a multi-defendant drug conspiracy case.  He argues that there is insufficient evidence to support the jury's finding that he was one of the "principal administrators, organizers, or leaders" of the continuing criminal enterprise under 21 U.S.C. § 848(b).  He also argues that there was an error in the indictment, that the Government did not prove all necessary elements of the charge, that the District Court improperly dismissed his challenge under Batson v. Kentucky, 476 U.S. 79 (1986) to the Government's striking of two jurors, that the District Court abused its discretion in allowing an FBI agent to testify as an expert, and that Patterson's conviction under 21 U.S.C. §§ 846 and 848 constitutes double jeopardy.  For the reasons stated below, we affirm Patterson's conviction under Count Eighty-nine, 21 U.S.C. §

2

848(b), but remand the case to the District Court to vacate his conviction under Count One, 21 U.S.C. § 846.

## I.

As we write solely for the parties, our recitation of the facts will be limited to those necessary to our determination. Patterson was indicted, along with thirty-six co-defendants in a 135-count third superseding indictment (the "Indictment"). Patterson was charged in thirty-two counts, including Count Eighty-nine, which charged him with involvement in a continuing criminal enterprise in violation of 21 U.S.C. § 848(b), and Count One, which charged him with conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846.

The Government alleges that from Spring 1997 through February 26, 2002, Patterson and his co-defendants operated a cocaine distribution enterprise in violation of 21 U.S.C. § 848. Courtney Carter ("Carter") stood at the head of the conspiracy. Carter would obtain drugs from a supplier, and would immediately call Patterson and Jamal Morris ("Morris") and direct them to meet him at his apartment. (Supplemental Appendix ("Supp. App.") at 265.) Carter would supply cocaine without requiring full reimbursement, or "front" it, to a few trusted co-conspirators, including Patterson. Patterson, in turn, would distribute the cocaine to other sellers. (Id. at 316.) Carter testified that he and Patterson "always had a close relationship." (Id. at 713.)

Patterson would front drugs to people who handled drug operations on street corners and blocks for him. (Id. at 216-17.) Patterson had at least four people who

3

received drugs directly from him: Christopher Williams ("Williams"), Malik Williams, Anton Tyler, and Shannon Myrick. (Id. at 246-54.) Williams would then supply a large number of people with cocaine, and had people who sold cocaine for him. Id. Patterson also supplied drugs to sellers in Pittsburgh. (Id. at 232-33.)

Patterson raised Williams as his favorite "young boy" - a protege in the drug business. (Id. at 218, 221.) When Williams began to expand his reach, Patterson fronted him drugs because Williams "didn't have no money . . . . [Patterson] was starting him out. Helping him out." (Id. at 225.) Patterson arranged for a Mercedes Benz lease for Williams, only eighteen years-old at the time, from a luxury car dealer who supplied many cars for conspirators in the Carter organization. (Id. at 573-78.)

Patterson supplied another corner at 56th Street and Catharine Street in Philadelphia, which was also allegedly under his control. According to the testimony of a Government witness and alleged co-conspirator, although it was Anton Tyler's corner, the workers on the block were "Giovanni's worker[s]," – "Giovanni" being a nickname for Patterson. (Id. at 560.) When one of the corner's hustlers was arrested, Patterson and Williams provided his bail money because he was "Giovanni's worker." (Id. at 538.)

Patterson was tried before Judge Stewart Dalzell in the Eastern District of Pennsylvania beginning April 14, 2004. During jury selection, Patterson challenged the Government's striking of two African American jurors. Patterson's Batson challenges were denied.

At trial, the Government called Special Agent Anthony Tropea ("Tropea") as a

4

witness and qualified him as an expert in the area of telecommunication data/pen register information. Patterson objected to the qualification but was overruled. Tropea testified as to the telecommunications patterns between the various defendants, and testified that the patterns were consistent with a drug operation.

## II.

Patterson argues that there is insufficient evidence to support the jury's finding that he served as a principal administrator, organizer, or leader in the continuing criminal enterprise pursuant to 21 U.S.C. § 848(b). In order to be a principal administrator, organizer, or leader, Patterson need not be a "kingpin" or "ringleader." United States v. Johnson, 54 F.3d 1150, 1155 (4th Cir. 1995). He need only have provided "help, guidance and advice" and wholesale drugs on consignment to fall within § 848(b). See United States v. Becker, 892 F.2d 265, 267 (3d Cir. 1989).

In order to determine whether evidence is sufficient to support a conviction, "we must determine whether, viewing the evidence most favorably to the government, there is substantial evidence to support the jury's guilty verdict." United States v. Wexler, 838 F.2d 88, 90 (3d Cir. 1988) (citing Glasser v. United States, 315 U.S. 60, 80 (1942)). The "strict principles of deference to a jury's findings" compel us "to draw all reasonable inferences . . . in the government's favor." United States v. Ashfield, 735 F.2d 101, 106 (3d Cir. 1984). We must sustain the verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Voigt, 89 F.3d 1050, 1080 (3d Cir. 1996) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

A claim of insufficiency of the evidence therefore places "a very heavy burden" on Patterson. United States v. Gonzalez, 918 F.2d 1129, 1132 (3d Cir. 1990) (citation omitted). Patterson has not met this burden.

The jury's finding that Patterson played a leadership role in the Carter organization was supported by the testimony of numerous Government witnesses, who gave detailed testimony as to Patterson's activities in the conspiracy. As described above, these witnesses testified that Patterson exercised a degree of control over certain corners where the sellers worked, providing his "young boys" with drugs and guidance, posting bail for sellers, and even supplying one with a car. When Patterson and "people . . . that had to do with" Patterson were robbed by a rival dealer, he organized retaliation. (Supp. App. at 612-16.) Patterson also provided drugs to numerous sellers on consignment. Taken together, this evidence could lead a reasonable juror to conclude that Patterson provided the necessary guidance to qualify as an administrator, organizer, or leader in the continuing criminal enterprise under 21 U.S.C. § 848(b).

Patterson next argues that, because § 848 was cited in the Indictment rather than § 848(b) specifically, he was not given notice he would be tried as a principal administrator, organizer, or leader under § 848(b). Where, as here, an alleged defect in the indictment was not objected to, the indictment is subject to plain error review. United States v. Cotton, 237 F.3d 625, 631-32 (2002). The omission of the "(b)" after "§ 848" was not plain error. Although § 848(b) was not specifically cited, the Indictment did state that Patterson was a "principal administrator, organizer, or leader" in the continuing criminal

6

enterprise, which is the subject of § 848(b). Therefore, it is simply without merit for Patterson to argue that he was not on notice that the Government would be trying him as a "principal administrators, organizers, or leader" in the continuing criminal enterprise pursuant to § 848(b).

Patterson's argument that the conviction must be overturned because the Government also failed to prove the amount of money in the enterprise exceeded $10 million in any twelve-month period must also fail. Patterson ignores the fact that the Government need not prove the amount generated by the conspiracy – it may also prove, in the alternative, that the conspiracy involved at least 300 times the quantity of substance described in subsection § 841(b)(1)(b). United States v. Jackson, 345 F.3d 638, 646 (8th Cir. 2003). The Government chose to indict under this prong, not the revenue prong, and it was this prong it chose to prove to the jury. There was therefore no error in the District Court not requiring the Government to prove the amount of money the conspiracy generated exceeded $10 million.

Patterson also argues that the District Court improperly dismissed his Batson challenge when the prosecutor struck two African American potential jurors. A Batson challenge is a procedure by which a party challenges the other party's use of a peremptory strike on the basis that it violates the Equal Protection clause of the Constitution, such as on the basis of race. See United States v. DeJesus, 347 F.3d 500, 502 n.2 (3d Cir. 2003). We evaluate a Batson claim using a three-part test: 1) has the objector established a prima facie case of purposeful discrimination in the exercise of

7

peremptory challenges against jurors of, for example, a particular race?; 2) if yes, did the party defending the challenges rebut the prima facie case by tendering a race-neutral explanation for the strikes?; 3) if so, has the objector carried his or her burden of proving purposeful discrimination, such as showing that the proffered explanation is pretextual. See United States v. Milan, 304 F.3d 273, 281 (3d Cir. 2002). A trial court's finding as to the lack of intentional discrimination is a finding of fact reviewed for clear error. United States v. Casper, 956 F.2d 416, 419 (3d Cir. 1992) (citing United States v. Celmons, 892 F.2d 1153, 1157 (3d Cir. 1989)).

Here, the District Court accepted the prosecutor's race-neutral explanations for striking the jurors. The prosecutor noted that one of the stricken jurors "appeared to be confused," like a "deer in headlights," and "perhaps afraid." (App. at 101.) Given the level of violence in the case, the prosecutor did not "want to have those types of issues even remotely at the back of the juror's mind." (Id.) With regard to the other juror, the prosecutor observed her "making eye contact with the defendants" which, while perhaps not the result of "attraction" indicated to the prosecutor "some degree of happiness about being [there] to see [the] defendants." (App. at 102.) The prosecutor was also concerned with the fact that, when the District Court asked potential jurors about any "grave concern[s]" they might have about serving, the potential juror discussed an appointment for her son for kindergarten and modeling. (Id.)

The District Court did not commit clear error in accepting these explanations. The

8

prosecutor's "[c]redibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." Miller-El v. Cockrell, 537 U.S. 322, (2003). The District Court considered the prosecutor's demeanor and behavior throughout the trials involving this conspiracy. (App. at 106.) The explanations also have a basis in trial strategy and are credible; indeed, the District Court shared the prosecutor's concerns about the juror who was concerned about her child's appointments. (App. at 103.) Therefore, Patterson has not met his burden of demonstrating clear error on the part of the District Court in failing to accept these explanations as pretext for racial discrimination.

Patterson also argues that the District Court abused its discretion in allowing Special Agent Anthony Tropea to testify as an expert in the use of telephones in a drug trafficking organization based on his experience in collecting and using telephone information to investigate large drug organizations.[1] The two-step inquiry into

---

[1]Testimony by experts in criminal trials is governed by Federal Rule of Evidence 702, which sets forth:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.

9

admissibility of expert testimony requires the trial judge to assess the relevance and reliability of the expert's testimony. The relevance requirement mandates a "fit" between testimony and the issue to be resolved by trial, while the reliability requirement contends with the methodology and principles underlying the testimony. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993).

Here, Tropea testified as to how a large quantity of telephone contact data was collected from pen registers and telephone records, stored in a database, and then analyzed. (App. 110-17.) He testified to Patterson's use of cellular telephones, Patterson's common contacts, and the patterns of telephone contacts surrounding certain incidents, such as a shooting at Penrose Plaza that co-conspirators testified to. (Id.) Based on his fourteen years of experience, Tropea opined that a certain phone was used by Patterson based on these patterns and the use of a "known phone" seized from Patterson. (Id. at 110-26.) He testified to the practice of drug dealers "dropping" phones while warrants are attained, and using another phone. (App. At 139-40.) Tropea also explained numerous charts that summarized the phone use patterns. (App. At 110-20, 127, 134, 146-48.)

The District Court did not abuse its discretion in finding that Tropea's testimony was admissible as expert testimony. Courts have routinely permitted law enforcement agents to testify as experts on the practices and habits of drug dealers, including phone use. See United States v. Perez, 280 F.3d 318, 341-42 (3d Cir. 2000) (finding district court properly exercised its discretion in drug conspiracy trial to admit expert's testimony

10

with respect to drug traffickers' use of cell phones and pagers to evade location by police investigators; witness, thirty-two year law enforcement veteran, qualified as expert, and his testimony was helpful and relevant); United States v. Brewer, 1 F.3d 1430, 1436 (4th Cir. 1993) (phone use by drugs dealers); see also United States v. Theodoropoulos, 866 F.2d 587, 590-91 (3d Cir. 1989) (jargon used by drug dealers). Moreover, police investigative techniques are also often the subject of expert testimony. See United States v. Mitchell, 365 F.3d 215, 234 (3d Cir. 2004) (fingerprint analysis). Given the expert's experience, the topic, and the technical information at issue, the District Court did not abuse its discretion in allowing Tropea to testify as an expert.

Finally, Patterson and the Government both argue that Patterson's conviction on Count One, under 21 U.S.C. § 846, was a lesser offense included in 21 U.S.C. § 848, charged in Count Eighty-nine, and thus his conviction on Count One constitutes double jeopardy and clear error. We agree. Under Rutledge v. United States, 517 U.S. 292, 300, 307 (1996), 21 U.S.C. § 846 is a lesser included offense in 21 U.S.C. § 848. Because we affirm the conviction under 21 U.S.C. § 848, we remand the case to permit the District Court to dismiss the conviction under 21 U.S.C. § 846. Id. at 307.

## III.

For the reasons stated above, we affirm Patterson's conviction and sentence but remand the case for the dismissal of Count One of the Indictment and the amendment of the judgment of conviction accordingly.

———

11