NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4666
_____

UNITED STATES OF AMERICA

v.

JAMES LAMONT JOHNSON,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 12-cr-00052-1)
District Judge:  Honorable Maurice B. Cohill, Jr.
_____

Submitted Under Third Circuit LAR 34.1(a)
September 12, 2014

Before:  FISHER, JORDAN, and HARDIMAN *Circuit Judges*.

(Filed:  September 16, 2014)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

James Lamont Johnson appeals his conviction, under 26 U.S.C. § 5861(d), for possession of an unregistered firearm.[1] He contends that the United States District Court for the Western District of Pennsylvania erred in ruling that his prior convictions would be admissible as impeachment evidence, in denying his motion to suppress evidence of the firearm, and in denying his motion to exclude evidence of his prior relationship with a confidential informant. For the reasons that follow, we will affirm.

## I.    Background

### A.    *The Arrest*

On August 14, 2012, a man who became a confidential informant (the "C.I.") for the government confessed to the Meadville, Pennsylvania, Police Department that he had illegally manufactured a silencer,[2] which is categorized as a firearm under federal law. 26 U.S.C. § 5845(a)(7). The C.I. explained that he had promised to sell the silencer to Johnson in return for $150 but got cold feet. Evidently, after Johnson told the C.I. that he

---

[1] While Johnson writes in his brief that he appeals his sentence, he says nothing to support that statement and therefore has waived any such argument. *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993) ("[W]e note first that under Federal Rule of Appellate Procedure 28(a)(3) and (5) and Third Circuit Local Appellate Rule 28.1(a), appellants are required to set forth the issues raised on appeal and to present an argument in support of those issues in their opening brief. ... It is well settled that if an appellant fails to comply with these requirements on a particular issue, the appellant normally has abandoned and waived that issue on appeal and it need not be addressed by the court of appeals." (internal citations omitted)).

[2] A silencer is "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication." 18 U.S.C. § 921(a)(24).

needed the silencer to "take care of somebody in Erie," the C.I. decided to seek police assistance. (App. at 775.) Because the exchange was supposed to be imminent, the police asked the C.I. to set up a controlled delivery of the silencer where Johnson would meet the C.I. at the C.I.'s residence and the police would arrest Johnson after the transaction.

The following morning,[3] law enforcement officers from the Meadville Police Department, the Vernon Township Police Department, and Pennsylvania State Police established a surveillance ring around the C.I.'s residence. Officers watched as Johnson parked his red Lexus sedan in front of the C.I.'s home and entered the C.I.'s house. A little less than half an hour later, Johnson returned to his vehicle. He was observed making "some movement in the cockpit area of the driver of the vehicle." (App. at 506.) After "he hit the reverse lights," police vehicles surrounded his car. (App. at 507.) He was arrested without incident.

B.    *The Search*

In blocking Johnson's Lexus, a Pennsylvania State Police trooper parked his patrol car in such a way that its dashboard camera faced the driver's side of the Lexus and was thus able to record all of the activities surrounding Johnson's arrest. For example, the camera recorded Johnson's search upon arrest, in which the police were unable to locate the silencer. It also recorded officers searching the grassy area around the car but coming up empty-handed. Finally, it recorded Detective Sergeant Craig Gump of the Meadville

---

[3] The C.I. originally scheduled the delivery for the afternoon of August 14th but, when Johnson failed to show, rescheduled it for the next morning.

Police Department "stick[ing his] head in" and "peek[ing] into the floorboards and the seat area," but finding no silencer. (App. at 513.) Detective Gump testified that he entered the C.I.'s home after preliminarily searching the driver's side of Johnson's car to confirm that the deal went as planned. He learned that Johnson had failed to pay the C.I. at the time of the deal, instead promising to pay him later.

After Johnson was arrested, a Vernon Township patrolman called a tow truck to impound the vehicle so that it could be properly searched pursuant to a warrant. When the tow-truck driver arrived, he briefly entered the vehicle to take it out of gear. No one else entered the Lexus. In fact, to ensure that the car remained untainted before a warrant was obtained, "every seam of the doors" was taped shut with tamper-evidence tape and the car was stored in a locked garage.

The Chief of the Vernon Township Police Department, Randolph Detzel, drafted an affidavit for a warrant, which was promptly issued by the Pennsylvania Court of Common Pleas. Notably, the affidavit failed to state that money was not recovered from the operation, and omitted that the policy officers had briefly inspected the car in search of the silencer. Upon a search of the vehicle pursuant to the warrant, officers found various documents containing Johnson's name, a Samsung Galaxy cell-phone, and five radio frequency detectors, but no silencer. Police officers later conducted a Google search for "hidden compartments," focused on vehicles of the same year, make, and model as Johnson's. The search revealed that an empty space in the dashboard could fit up to a "12-once Styrofoam cup." (App. at 653.) Officers searched Johnson's dashboard accordingly and found the hidden silencer.

4

C.    *Johnson's Prior Relationship with the C.I.*

The C.I. had met Johnson in 2010 through a mutual friend.  In one of their first interactions, Johnson asked the C.I. "to set up a marijuana grow operation" in the C.I.'s home and then act as a distributor in Meadville.  (App. at 767.)  In return, Johnson paid him in cash and marijuana.  Johnson also gave the C.I. two .380 handguns and a 12-gauge shotgun.  At some point in their relationship, Johnson learned that the C.I. knew how to make silencers for handguns and asked him to manufacture a silencer for a .22 handgun. The C.I. obliged.

By early August 2012, Johnson asked the C.I. to make him twelve more silencers, including one for a .25 handgun, one for a .380 handgun, and ten more for various other guns.  The C.I. felt uneasy doing so.  Apparently sensing that hesitation, Johnson telephoned the C.I. and, according to the C.I., reminded him that he "knew where [the C.I.'s] family lived." (App. at 775.)  At that point, the C.I. contacted the police.

D.    *The Trial*

In September 2012, a federal grand jury indicted Johnson with Possession of an Unregistered Firearm, *i.e.*, the silencer, in violation of 26 U.S.C. § 5861(d).  He pleaded not guilty.

Before the start of trial, Johnson moved to suppress the silencer on the theory that Detzel's warrant affidavit contained materially false statements or reckless omissions of fact.  The District Court denied the motion after holding a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), in which Detzel and the C.I. testified.

5

When the government moved to allow the C.I.'s testimony about his prior relationship with Johnson, pursuant to Rule 404(b) of the Federal Rules of Evidence, and then offer into evidence Johnson's prior convictions, under Rule 609 of those Rules, Johnson filed a motion in limine to exclude such evidence. The Court nevertheless granted the government's motions in part, holding that Johnson could be impeached by some, but not all, of his prior convictions, if he chose to testify, and that the government could offer some, but not all, of the details surrounding Johnson's prior relationship with the C.I. Johnson decided not to testify.

A jury found Johnson guilty, and the Court sentenced him to 120 months' imprisonment with three years of supervised release.

This timely appeal followed.

## II.      Discussion[4]

As noted earlier, Johnson argues that the District Court erred in ruling that some of his prior convictions would be admissible as impeachment evidence if he chose to take the stand, in denying his motion to suppress the silencer, and in denying his motion to exclude evidence of his prior relationship with the C.I. Because Johnson failed to take the stand, he waived his right to appeal the Court's decision with respect to his prior convictions.[5] *Luce v. United States*, 469 U.S. 38, 43 (1984) ("We hold that to raise and

---

[4] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231. We exercise jurisdiction over Johnson's appeal pursuant to 28 U.S.C. § 1291.

[5] In any event, the District Court did not abuse its discretion in ruling that some of Johnson's prior convictions could be admitted if he chose to take the stand. The Court explicitly weighed and considered which convictions would be more prejudicial than

6

preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify."). We therefore need not consider that issue further, and we turn to his remaining arguments.

A. *Motion to Suppress*[6]

The Fourth Amendment mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. When a defendant is able to make a preliminary showing that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," the Fourth Amendment requires a court to conduct an inquiry – known as a *Franks* hearing, after the Supreme Court case establishing the obligation – to determine whether, after either setting aside the affidavit's false information or inserting omitted relevant facts, the affidavit is sufficient to establish probable cause. *Franks*, 438 U.S. at 155-56. If the corrected affidavit is not sufficient to establish probable cause, "the fruits of the search" must be excluded. *Id*. at 156. "[O]missions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person

---

probative and "reserve[d] judgment" on admitting Johnson's drug conviction to see how the trial "unfolds." (App. at 27.)

[6] We review a "[d]istrict [c]ourt's factual findings for clear error" on a motion to suppress and "exercise plenary review over its legal determinations." *United States v. Stanley*, 753 F.3d 114, 118 (3d Cir. 2014) (internal quotation marks omitted).

would know that a judge would want to know." *Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir. 2000).

In *United States v. Frost*, 999 F.2d 737 (3d Cir. 1993), we clarified that exclusion of evidence pursuant to *Franks* is a two-prong inquiry: "a defendant must show *both* that bad faith or reckless disregard existed on the part of the affiant, *and* that there would have been no probable cause but for the" omission. *Id*. at 743 (emphasis in original). The second prong of *Franks* is sometimes discussed in terms of "materiality" and requires a court to "insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." *Wilson*, 212 F.3d at 789.

Even if we were to conclude that Chief Detzel was reckless in excluding the facts that no money exchanged hands during the silencer transaction and that policy officers conducted a preliminary search of the vehicle, we agree with the District Court that neither omission was material to the establishment of probable cause. It may well be true, as Johnson argues, that "a judge would want to know" that Johnson failed to pay the C.I. at the time of the delivery. *Id.* at 783. But not including that fact did not undermine the probable cause showing here. The simultaneous payment of money in exchange for goods may be proof of an illegal transaction, but the lack of a simultaneous exchange does not necessarily imply the absence of illegality. *Cf. United States v. Becker*, 892 F.2d 265, 267 (3d Cir. 1989) (noting that "consignment arrangement[s]" for contraband give "provider[s] of the substance the necessary supervisory control of the participants"). The C.I.'s communications with the police, as relayed in Chief Detzel's affidavit, amply demonstrated probable cause. Likewise, although the affidavit should have included

8

language explaining that policy briefly looked in the driver's side of the vehicle, there is no evidence that the search was anything more than a cursory look that did not affect the probable cause determination. A "quick visual check" of the floorboards, is a fact that does not change the outcome here.[7] (App. at 193-95.)

B.    *Admission of Evidence of Prior Relationship* [8]

Evidence of other bad acts is often divided into two categories: "those 'extrinsic' to the charged offense, and those 'intrinsic' to it." *United States v. Green*, 617 F.3d 233, 245 (3d Cir. 2010). Under Rule 404(b) of the Federal Rules of Evidence, extrinsic "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Nonetheless, such evidence may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Evidence offered under Rule 404(b) is admissible if it is:

> (1) offered for a proper non-propensity purpose that is at issue in the case;
> (2) relevant to that identified purpose; (3) sufficiently probative under Rule

---

[7] For its part, the government argues that we need not even reach the *Franks* question because any search of Johnson's vehicle would have been legal under the automobile exception or as a search incident to arrest. We do not address either exception under this set of facts because we affirm the District Court's denial of Johnson's motion to suppress under *Wilson*. 212 F.3d at 783.

[8] We review a district court's decision to admit evidence for an abuse of discretion. *United States v. Davis*, 726 F.3d 434, 440 (3d Cir. 2013). However, to the extent that a decision is based on a legal interpretation of the Federal Rules of Evidence, we exercise plenary review. *United States v. Green*, 617 F.3d 233, 239 (3d Cir. 2010). "This includes plenary review 'of whether evidence falls within the scope of Rule 404(b).'" *Id.* (quoting *United States v. Cruz*, 326 F.3d 392, 394 (3d Cir. 2003)).

403 such that its probative value is not outweighed by any inherent danger of unfair prejudice; and (4) accompanied by a limiting instruction, if requested.

*United States v. Caldwell*, No. 13-1918, -- F.3d -- , 2014 WL 3674684 at *7 (3d Cir. July 24, 2014).

On the other hand, because intrinsic evidence "aids understanding by 'complet[ing] the story'" of the charged crime, it is considered "part and parcel of the charged offense" and need not be subjected to Rule 404(b) review. *Green*, 617 F.3d at 245 (alteration in original and internal quotation marks omitted). But what is "intrinsic" is to be understood narrowly. Evidence is only intrinsic if it "directly proves the charged offense" or if it is an "uncharged act[] performed contemporaneously with the charged crime ... [and committed to] facilitate the commission of the charged crime." *Id.* at 249 (internal quotation marks omitted).

We see nothing in the record to indicate that the District Court abused its discretion. Given that the Court considered several pieces of evidence related to the C.I.'s prior relationship with Johnson and decided to exclude some of those facts, it is unpersuasive to claim that admitting other pieces of evidence was "arbitrary, fanciful or clearly unreasonable." *United States v. Starnes*, 583 F.3d 196, 214 (3d Cir. 2009) (internal quotation marks omitted). The District Court admitted the evidence for a proper non-propensity purpose relevant to this case, namely "for the purpose of deciding whether Mr. Johnson had the state of mind or knowledge necessary to commit the crime." (App. at 844.) The Court further explained the probative value of the evidence and

10

provided limiting instructions.[9]  Under these circumstances, we cannot say that the Court abused its discretion.[10]

### III.  Conclusion

Accordingly, we will affirm the District Court's judgment.

---

[9] For example, the Court instructed the jury as follows:

> Now, those five things that I just mentioned to you, he's not – Mr. Johnson is not on trial for any of those alleged offenses. The only thing he's charged with here is the possession of the silencer. So, as I say, this evidence of other acts is admitted only for very limited purposes. You can consider that other evidence only for the purpose of deciding whether Mr. Johnson had the state of mind or knowledge necessary to commit the crime charged in this indictment.

(App. at 844.)

[10] If anything, and as the government urges, the only possible misstep the Court made was subjecting to Rule 404(b) analysis the admission that Johnson needed a silencer to "take care of somebody in Erie." (App. at 775.)  We think such evidence is intrinsic to the alleged crime and therefore does not need to be analyzed under Rule 404(b).  But doing so did not amount to an abuse of discretion, given that the Court admitted the evidence.