UNITED STATES of America

v.

Martel INMON, a/k/a Marty, Martel Inmon, Appellant.

No. 78–1819.

United States Court of Appeals, Third Circuit.

Submitted Feb. 22, 1979.

Decided March 13, 1979.

G. William Bills, Jr., Pittsburgh, Pa., for appellant.

Robert J. Cindrich, U. S. Atty., Charles D. Sheehy, James J. West, Asst. U. S. Attys., Pittsburgh, Pa., for appellee.

Before ROSENN, VAN DUSEN and GARTH, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

Appellant is before this court for a second time arguing that the constitutional prohibition against double jeopardy bars prosecution of a second conspiracy indictment after defendant had pleaded guilty to a first indictment. On the prior appeal, we held that once a defendant has presented a prima facie non-frivolous claim of double jeopardy, he is entitled to an evidentiary hearing prior to trial to resolve the issue. *United States v. Inmon,* 568 F.2d 326 (3d Cir. 1977). This case was remanded for such a hearing. The district court conducted the hearing and ruled that the Government had proven by a preponderance of the evidence the existence of two separate conspiracies. Inmon was tried and convicted and now appeals claiming: (1) that the Government failed to sustain its burden of proving two separate conspiracies; (2) that the Government's evidentiary burden at the hearing should have been proof beyond a reasonable doubt; and (3) that he was improperly sentenced. We reject all of these contentions and affirm.

On July 14, 1976, two indictments were returned against Martel Inmon charging various violations of federal narcotics laws. In Criminal No. 76–140 (Inmon I) the Government charged Inmon and nine co-defendants on twenty-eight counts of conspiracy to distribute, possession, and distribution of heroin. The overt acts were alleged to have taken place in Pittsburgh between September 1, 1975 and April 4, 1976.

Criminal No. 76–141 (Inmon II) charged Inmon and seventeen co-defendants on thirty-four counts. The overt acts allegedly took place in Pittsburgh between February 1, 1975 and July 14, 1976.

Inmon pleaded guilty to the conspiracy count and one substantive count of Inmon I. He received a sentence of fifteen years imprisonment and a three year special parole term. The defendant moved for a dismissal of the Inmon II indictment arguing that his guilty plea to Inmon I had placed him in former jeopardy. The motion was denied and Inmon appealed.

This court affirmed the denial of the motion to dismiss pertaining to the substantive counts but reversed and remanded the denial of the motion to dismiss the conspiracy count. After the hearing, Inmon was tried and convicted on twelve counts of the Inmon II indictment including conspiracy. He was sentenced as follows: the conspiracy count—five years plus three years special parole consecutive to the sentence of Inmon I; five substantive counts—five years plus three years special parole concurrent with the conspiracy count and each other; six substantive counts—four years concurrent with the conspiracy count and each other.

As to his contention that the Government failed to sustain its burden of establishing the existence of two separate conspiracies, Inmon points to the prior opinion of this court wherein we stated: "The government . . . contends that there were two separate conspiracies and that Inmon was separately, though centrally, involved in both. This is possible, but unlikely." *United States v. Inmon, supra* at 329. Inmon argues that this prediction was accurate and that the Government failed to prove two separate conspiracies. The factors Inmon relies on to show a single conspiracy are as follows:

(1) both indictments charged violations of the same crime;

(2) the primary locale of criminal activity in both indictments was in Pittsburgh;

(3) the Inmon II indictment subsumed the time period in Inmon I;

(4) the personnel involved in the two indictments overlapped. Although Inmon was the only individual indicted twice, one unindicted co-conspirator

in Inmon I was indicted in Inmon II and two unindicted co-conspirators in Inmon II were indicted in Inmon I;

(5) the overt acts charged in both indictments show Inmon as the central figure in both.

Inmon relies primarily on *United States v. Mallah*, 503 F.2d 971 (2d Cir. 1974), to support his argument that only one conspiracy exists. In *Mallah*, the Second Circuit faced with a somewhat similar situation held that the second trial violated the defendant's fifth amendment privilege and the conviction could not stand.

 We are persuaded, however, by the district court's analysis that two conspiracies were proven:[1]

Time frames and personnel can overlap in separate criminal agreements. In a metropolitan area such as Pittsburgh, it is possible for more than one scheme involving the distribution of heroin to exist. Here it is clear that there is a difference between the two conspiracies with respect to the key factor of suppliers. This salient factor was lacking in *Mallah*.

In Inmon I, indicted co-conspirator Sylvestor Wade was Inmon's supplier who furnished him with brown heroin of a consistency similar to freeze dried coffee and packaged in sealed envelopes. There was evidence that Wade's source was in Chicago.

In Inmon II, indicted co-conspirator Frank Dattalo was Inmon's alleged supplier who furnished him with brown heroin in rock form and packaged in condoms. It appears that Dattalo's source was in California.

There were two separate and definable groups, the "Wade group" and the "Dattalo group," with no true nexus between the two. Inmon was a middleman in both groups and a partner in the criminal purposes of each group.

We hold that on the basis of these facts the Government sustained its burden of proving two separate conspiracies.

Neither of Inmon's other contentions requires discussion. In the prior opinion, we dwelt in depth on the nature of the evidentiary burden at the double jeopardy hearing and concluded that proof by a preponderance of the evidence is the proper standard. *United States v. Inmon, supra* at 332. We are bound by the ruling of a prior panel which can only be reversed by the entire court sitting en banc.

We further hold that Inmon's sentence was not improper. Enunciating reasons for a sentence has never been held to be a constitutional requirement. *Washington v. Regan*, 510 F.2d 1126, 1129 (3d Cir. 1975). Furthermore, the length of the sentence was not an abuse of discretion. Inmon concedes that he was "the central supplier" in a "large-scale heroin operation."

The judgment and sentence of the district court will be affirmed.

invoking the discretionary concurrent sentence doctrine.

---

1. On the facts presented by this record, we decline to accept the Government's invitation to avoid reaching the merits of this issue by