**UNITED STATES of America**

v.

**LIOTARD, Russell, Appellant.**

**No. 86–5489.**

United States Court of Appeals, Third Circuit.

Argued Feb. 25, 1987.

Decided May 6, 1987.

Lawrence S. Lustberg (argued), Asst. Federal Public Defender, Newark, N.J., for appellant.

Gail H. Nichols (argued), Asst. U.S. Atty., Thomas W. Greelish, U.S. Atty., Samuel P. Moulthrop, Chief, Appeals Div., Newark, N.J., for appellee.

Before WEIS, BECKER, and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

On January 6, 1986, appellant Russell Liotard ("Liotard") was indicted in the United States District Court for the Western District of Pennsylvania on one count of conspiracy to transport stolen goods in interstate commerce in violation of 18 U.S.C. § 371 (1982), and two counts of transporting stolen goods in interstate commerce in violation of 18 U.S.C. § 2314 (1982).[1] On March 7, 1986, after a five-day trial, Liotard was acquitted on all counts. On April 18, 1986, Liotard was indicted in the United States District Court for the District of New Jersey on one count of conspiracy to steal from an interstate shipment of goods in violation of 18 U.S.C. § 371, one count of theft from an interstate shipment of goods in violation of 18 U.S.C. § 659 (1982), and one count of receipt and concealment of stolen goods in violation of 18 U.S.C. § 2315 (1982).[2] Liotard entered a plea of not guilty, and a trial date of June 16, 1986 was set. On May 29, 1986, Liotard filed a motion to dismiss the indictment on double jeopardy grounds. The trial court dismissed this motion both initially and on reconsideration. *See United States v. Liotard*, 638 F.Supp. 1101 (D.N.J.1986). This appeal followed.

Russell Liotard and his alleged coconspirators in the two indictments were employees of the John J. Veteri Leasing Corporation ("Veteri"), a trucking company engaged in interstate shipping. Both the Pittsburgh and the New Jersey indictments allege that Liotard and others conspired to and did steal Veteri trucks and the merchandise contained therein from the Veteri

---

1. The January 6, 1986 indictment is hereinafter referred to as the "Pittsburgh indictment."

2. The April 18, 1986 indictment is hereinafter referred to as the "New Jersey indictment."

lot in Fairfield, New Jersey. Each indictment alleges that Liotard, who had been Veteri's dispatcher, played a role in determining which truckloads of merchandise his coconspirators would steal from the Veteri lot. The purported goal of each conspiracy was, in addition to the personal enrichment of the participants, the financial ruination of the alleged coconspirators' employer, John Veteri.[3]

The Pittsburgh indictment charged Liotard, Albert Little ("Little"), and two others with participation in a conspiracy extending from September 27, 1985 to October 2, 1985. The indictment alleged that those charged conspired to transport, and did transport, three stolen trailers full of mixed merchandise from Fairfield, New Jersey to Pittsburgh, Pennsylvania. The three trailers were selected by Little from a list prepared by Liotard describing the contents of ten trailers parked in the Veteri lot. The composition of this list was the only overt act with which the Pittsburgh indictment charged Liotard. The actual transportation of the goods from Fairfield to Pittsburgh was accomplished by the other indicted coconspirators and Bernice Joan Marasco ("Marasco"), Little's girlfriend.

The New Jersey indictment charged Liotard and two others with participation in a conspiracy beginning on or about August 3, 1985 and ending on December 30, 1985. The indictment alleged that those charged, along with unindicted coconspirators Little and Marasco, conspired to transport, and did transport, a stolen trailer load of Sony electronic equipment from Fairfield, New Jersey to Elmer, New Jersey. Little allegedly removed the trailer from the Veteri lot upon Liotard's suggestion. Liotard also allegedly participated in transporting the stolen trailer to Elmer and unloading the Sony equipment from the trailer.

On this appeal,[4] we must determine whether Liotard is entitled to a pre-trial hearing to determine whether his acquittal[5] on the Pittsburgh conspiracy charge bars the New Jersey conspiracy indictment[6] under the double jeopardy clause. See U.S. Const. amend. V, cl. 2. It is settled law in this circuit that a defendant moving to dismiss an indictment on double jeopardy grounds has the burden of going forward with the evidence by putting his double jeopardy claim in issue. See *United States v. Felton*, 753 F.2d 276, 278 (3d Cir.1985). If the defendant makes a non-frivolous showing of double jeopardy, he is entitled to a pre-trial evidentiary hearing to determine the merits of his claim. See *United States v. Inmon*, 594 F.2d 352, 353 (3d Cir.), *cert. denied*, 444 U.S. 859, 100 S.Ct. 121, 62 L.Ed.2d 79 (1979). Once the defendant has made out his prima facie case, the burden of persuasion shifts to the government to prove by a preponderance of the evidence that the two indictments charge the defendant with legally separate crimes. *Felton*, 753 F.2d at 278.

In this circuit, the determination of whether "two offenses charged are in law and fact the same offense," *Felton*, 753 F.2d at 278 (citations omitted), is made pursuant to the "same evidence" test. See *United States v. Young*, 503 F.2d 1072, 1075 (3d Cir.1974). The same evidence test inquires whether " 'the evidence required to support a conviction upon one of [the indictments] would have been sufficient to warrant a conviction upon the other.' " *Id.* (quoting *United States v. Pacelli*, 470 F.2d 67, 72 (2d Cir.1972), *cert. denied*, 410 U.S. 983, 93 S.Ct. 1501, 36 L.Ed.2d 178 (1973)).

---

3. Detailed statements made by two of the participants in the scheme indicate that theft of merchandise *from* trailers was an ongoing activity engaged in by many Veteri employees.

4. Liotard's appeal from the district court's denial of his motion to dismiss is interlocutory. We have jurisdiction over that portion of his appeal concerning the double jeopardy clause. See *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

5. The double jeopardy clause "protects against a second prosecution for the same offense after acquittal." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

6. Acquittal on the Pittsburgh conspiracy charge does not bar prosecution for the substantive charges contained in the New Jersey indictment. *See United States v. Inmon*, 568 F.2d 326, 333 (3d Cir.1977).

We have recognized that in a conspiracy case like the one before us, the same evidence test may not adequately protect the defendant's constitutional right against double jeopardy, unless it is "tempered . . . with the consideration that a single conspiracy may not be arbitrarily subdivided for the purposes of prosecution." *Id.* The danger is that successive indictments against a single defendant for participation in a single conspiracy might withstand same evidence scrutiny if the court places undue emphasis upon the evidence used to prove the commission of the overt acts alleged. However, it is clear that:

> Different alleged overt acts are not necessarily inconsistent with an improper division of a single conspiracy into multiple crimes. It is the agreement which constitutes the crime, not the overt acts.... Proper weight must be given to consideration of whether the overt acts alleged in the first conspiracy charge were carried out in furtherance of the broad agreement alleged in the second indictment or whether these acts were carried out in furtherance of a different agreement.

*Young,* 503 F.2d at 1076 (citations omitted).

■ A majority of courts of appeals has concluded that a multi-pronged "totality of circumstances" analysis is preferable to the same evidence test for evaluating the merits of a conspiracy defendant's double jeopardy claim. *See United States v. MacDougall,* 790 F.2d 1135, 1144 (4th Cir. 1986); *United States v. Korfant,* 771 F.2d 660, 662 (2d Cir.1985); *United States v. Thomas,* 759 F.2d 659, 661–62 (8th Cir. 1985); *United States v. Sinito,* 723 F.2d 1250, 1256 (6th Cir.1983), *cert. denied,* 469 U.S. 817, 105 S.Ct. 86, 83 L.Ed.2d 33 (1984); *United States v. Phillips,* 664 F.2d 971, 1006 (Former 5th Cir.1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982); *United States v. Castro,* 629 F.2d 456, 461 (7th Cir.1980); *United States v. Marable,* 578 F.2d 151, 154 (5th Cir. 1978). We have yet to adopt the totality of circumstances approach set out in these cases explicitly, *see Felton,* 753 F.2d at 281, despite a forceful dissent encouraging us to do so. *See United States v. Sargent Electric Co.,* 785 F.2d 1123, 1139 (3d Cir.) (Adams, J., dissenting), *cert. denied,* —— U.S. ——, 107 S.Ct. 82, 93 L.Ed.2d 36 (1986). We have, however, employed a totality of circumstances approach in two appeals brought by conspiracy defendants on double jeopardy grounds. *See Felton,* 753 F.2d at 278–81; *United States v. Inmon,* 568 F.2d at 328–29. Under the totality of circumstances approach followed in *Inmon* and *Felton,* a conspiracy defendant will make out a non-frivolous showing of double jeopardy if he can show that (a) the "locus criminis" of the two alleged conspiracies is the same, *see Felton,* 753 F.2d at 279; *Inmon,* 568 F.2d at 328; (b) there is a significant degree of temporal overlap between the two conspiracies charged, *see Felton,* 753 F.2d at 279; *Inmon,* 568 F.2d at 328; (c) there is an overlap of personnel between the two conspiracies (including unindicted as well as indicted coconspirators), *see Felton,* 753 F.2d at 279–81; *Inmon,* 568 F.2d at 328; and (d) the overt acts charged and the role played by the defendant according to the two indictments are similar. *See Felton,* 753 F.2d at 279; *Inmon,* 568 F.2d at 328. We now make explicit what has long been implicit in our jurisprudence: reviewing courts must use the totality of circumstances test to evaluate the merits of a conspiracy defendant's double jeopardy claim.[7]

---

7. We note that in the totality of circumstances test adopted by the second, fourth, fifth, sixth and eighth circuits, the "statutory offenses charged in the indictments" constitute one factor to be considered by the court in determining whether one or more conspiracies exist. *See MacDougall,* 790 F.2d at 1144; *Korfant,* 771 F.2d at 662; *Thomas,* 759 F.2d at 662; *Sinito,* 723 F.2d at 1256; *Marable,* 578 F.2d at 154. We decline to follow this aspect of the majority approach because we believe it might lead to irrational results in the cases like the one before us, where different statutes are violated by similar acts. For example, the charges brought against Liotard in the two indictments differ not because of the substance of the violations, but because of the interstate nature of the acts alleged in the Pittsburgh indictment and the intrastate nature of the acts alleged in the New Jersey indictment. For purposes of determining the parameters of the two alleged conspiracies, these differences in statutory violation are immaterial and fortuitous. *See Braverman v. United States,* 317 U.S. 49, 53, 63 S.Ct. 99, 102, 87 L.Ed. 23 (1942) ("The one agreement cannot

We conclude that, under the totality of circumstances approach set out in *Inmon* and *Felton*, Liotard has made a non-frivolous showing of double jeopardy, and is therefore entitled to a pre-trial hearing to determine the merits of his double jeopardy claim. First, the "locus criminis" of both the Pittsburgh and the New Jersey indictment is the same. In both cases, the trailers and merchandise were stolen from the Veteri lot in Fairfield, New Jersey. Because the initial theft of the merchandise from Veteri's lot is at the core of both indictments, the trailers' later sojourns to different spots for unloading is immaterial. Second, while the time periods of the two indictments differ, the period of the conspiracy charged in the Pittsburgh indictment is entirely subsumed within the period of time set out in the New Jersey indictment. Third, Little was a principal coconspirator with Liotard in both indictments. Although Marasco, Little's girlfriend, was indicted in neither conspiracy, she was a named participant in the Pittsburgh conspiracy, and an unindicted coconspirator in the New Jersey indictment. Fourth, the overt acts charged in the two indictments are nearly identical. Both indictments charge the theft of trailers full of merchandise from the Veteri lot by Veteri employees. The fact that the Pittsburgh theft involved a mixed haul, whereas the New Jersey theft was of Sony recording equipment only, does not render these acts materially dissimilar for purposes of the *Inmon-Felton* analysis. Furthermore, Liotard performed a similar function in each of the Veteri thefts according to the two indictments. Each indictment alleges that Liotard played a role in determining which trailers would be removed from the Veteri lot. The government points out that in the Pittsburgh conspiracy, Liotard earmarked ten trailers for possible theft out of which Little chose three, while in the New Jersey conspiracy, Liotard directed Little's attention to one specific trailer. The government also observes that Liotard assisted in unloading the Elmer, New Jersey haul, but had no physical contact with the truckload that ended up in Pittsburgh. Based on these facts, the government concludes that Liotard's role in the New Jersey episode was far more central to the success of the scheme than was his participation in the Pittsburgh episode. This elevation in Liotard's importance, the government argues, is fatal to his claim of a single conspiracy. We conclude that these distinctions are not enough to destroy the defendant's non-frivolous demonstration of a double jeopardy violation.[8]

In addition to his double jeopardy claim, Liotard argues that the government is wrongfully subjecting him to piecemeal and fragmentary prosecution by bringing successive indictments against him in Pittsburgh and New Jersey for crimes that should have been joined in a single prosecution. He appeals the district court's refusal to exercise its supervisory powers in order to protect him from this fragmentary prosecution. The government argues that the district court's denial of this motion is not a final order within the meaning of 28 U.S.C. § 1291 (1982), and thus is not appealable. We agree.

Under 28 U.S.C. § 1291 only final orders are appealable. *See Richerson v. Jones*, 551 F.2d 918, 921 (3d Cir.1977). Interlocutory orders will be treated as final orders for purposes of § 1291 where they satisfy the three-part "collateral order" doctrine set out in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The *Cohen*

---

be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one.").

**8.** Nor are we impressed by the government's argument that the fact that the New Jersey and Pittsburgh heists were arranged in distinct conversations proves the existence of more than one conspiratorial agreement. These separate agreements could easily have been sub-pacts in the course of one over-arching conspiratorial

enterprise or "continuous conspiratorial relationship." *See* LaFave and Scott, *Criminal Law* at 480 (1973). It is absurd to think that, once the participants agreed to a general plan to steal from Veteri, their actions would henceforth become automatic and that any additional meeting to organize the specific sub-plots of their overall scheme would be either superfluous or indicative of a separate conspiracy.

doctrine permits appellate review of interlocutory orders that (1) conclusively determine the disputed question, (2) resolve an issue completely separate from and collateral to the merits of the litigation, and (3) involve an important right that will be effectively unreviewable if intermediate review is not granted. *United States v. Levine,* 658 F.2d 113, 117 (3d Cir.1981) (citing *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978); *Abney v. United States,* 431 U.S. 651, 658, 97 S.Ct. 2034, 2039, 52 L.Ed.2d 651 (1977); *Cohen,* 337 U.S. at 546, 69 S.Ct. at 1225).

"Adherence to [the] rule of finality has been particularly stringent in criminal prosecutions because 'the delays and disruptions attendant upon intermediate appeal,' which the rule is designed to avoid, 'are especially inimical to the effective and fair administration of the criminal law.'" *Abney,* 431 U.S. at 657, 97 S.Ct. at 2039 (citations omitted). Thus, the Supreme Court has permitted interlocutory appeal of a denial of a motion to dismiss an indictment in only two narrow instances: (1) where the district court denies a motion to dismiss on double jeopardy grounds, *see Abney,* 431 U.S. at 662, 97 S.Ct. at 2041, and (2) where a district court denies a motion to dismiss an indictment on the basis of the speech or debate clause. *See Helstoski v. Meanor,* 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979). Confronted with an appeal from a denial of a motion to dismiss an indictment on statute of limitations grounds, we distinguished the defendant's claim from *Abney* and *Helstoski* on the following basis:

> [W]e conclude that the limitations statute here creates a safeguard against unfair convictions arising from delinquent prosecutions but does not entail a right to be free from trial. Therefore, the irreparable harm criterion which is needed to justify immediate appealability cannot be met. Indeed, the history, purposes and language of limitations statutes suggest that, unlike Double Jeopardy and Speech and Debate Clause claims, *these laws create time and manner restrictions*

> *on, rather than permanent barriers to, prosecution.*

*Levine,* 658 F.2d at 126 (emphasis added); *accord, United States v. Litman,* 661 F.2d 17 (3d Cir.1981), *cert. denied,* 454 U.S. 1150, 102 S.Ct. 1016, 71 L.Ed.2d 304 (1982).

 When the right to be free from trial is not vindicated prior to trial, that right can never be recovered. When the right to be tried in a particular manner is not vindicated prior to trial, the defendant can still avail himself of post-conviction remedies after the fact. This is true even if the defendant has already endured a trial that he should not have endured, and even if the proper remedy for the constitutional or statutory violation is dismissal of the charges or reversal of the conviction. *See United States v. Hollywood Motor Car Co.,* 458 U.S. 263, 269, 102 S.Ct. 3081, 3084, 73 L.Ed.2d 754 (1982) (per curiam); *United States v. MacDonald,* 435 U.S. 850, 860–61, 98 S.Ct. 1547, 1552–55, 56 L.Ed.2d 18 (1978) (speedy trial violation not immediately appealable). Because Liotard's request that the district court exercise its supervisory powers to protect him from fragmentary prosecution would, if successful, create a "manner restriction[ ] on, rather than [a] permanent barrier[ ] to, prosecution," we must dismiss his appeal from this part of the district court's order.

For the foregoing reasons, the order of the district court denying the defendant's double jeopardy motion will be reversed and the case remanded for a hearing on that motion in conformity with this opinion. The appeal from the district court's order denying the defendant's "supervisory powers" motion is dismissed.