

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-8-2008

# USA v. Gelean Mark

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1518

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Gelean Mark" (2008). *2008 Decisions.* Paper 871.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/871

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 08-1518
_____


UNITED STATES OF AMERICA

v.

GELEAN MARK,

Appellant


_____


Appeal from the District Court
of the Virgin Islands
(No. 05-cr-0076)
District Judge: Hon. Curtis V. Gomez

_____


Argued May 8, 2008


Before: RENDELL, FUENTES, and CHAGARES, <u>Circuit</u> <u>Judges</u>.


(Filed:July 8, 2008)
_____


Robert L. King, Esq. (Argued)
Law Offices of Robert L. King, Esq.
The Law Center
P.O. Box 9768
St. Thomas, Virgin Islands 00801
<u>Counsel for Appellant</u>

Delia Smith (Argued)
Assistant United States Attorney
5500 Veterans Drive, Suite 260
St. Thomas, Virgin Islands 00802-6424
<u>Counsel for Appellee</u>

_____

OPINION OF THE COURT

_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

Gelean Mark (Mark) appeals from the District Court's denial of his motion to dismiss an indictment on double jeopardy grounds. Mark contends that the drug conspiracies alleged in two separate indictments were actually a single agreement. Because the two alleged conspiracies had different objectives, we conclude that they are distinct and will affirm the District Court's decision.

I.

On October 6, 2005, a grand jury in the Virgin Islands charged Mark, Vernon Fagan (Fagan), Walter Ells (Ells), and others in an 18-count indictment, hereinafter referred to as "Redball I."[1] The indictment charged the defendants with conspiracy to

_____

[1]    Count I of the Redball I indictment charged:
Beginning from a time unknown, but no later than November 2004, and continuing until November 2005, at St. Thomas in the District of the Virgin Islands and elsewhere, defendants, Gelean Mark, Vernon Fagan, . . . did knowingly and intentionally, combine, conspire, confederate and agree together and with each other and with diverse other persons to the grand jury known and unknown, . . . to knowingly and intentionally possess with intent to distribute controlled substances, namely five (5) kilograms and more of a mixture and substance containing a

2

possess and distribute cocaine, cocaine base, and marijuana, and conspiracy to import

cocaine and cocaine base. While Redball I was pending before the United States District

Court for the Virgin Islands, the grand jury returned a separate 14-count indictment on

December 19, 2006, naming Mark, Fagan, Ells, and others as defendants. This

indictment, hereinafter referred to as "Redball II," alleged conspiracy to possess and

distribute cocaine and conspiracy to import cocaine. [2]

---

> detectable amount of cocaine, . . . fifty (50) grams and more of a mixture or
> substance containing a detectable amount of cocaine base, . . . and less than fifty
> (50) kilograms of marijuana . . . .

App. 48-49. Count XVIII of the Redball I indictment charged:

> Beginning from a time unknown, but no later than November 2004, and continuing
> until October 2005, at St. Thomas in the District of the Virgin Islands and
> elsewhere, the defendants, Gelean Mark, Vernon Fagan, . . . did knowingly and
> intentionally conspire, confederate, and agree together and with each other . . . to
> import controlled substances into the United States from a place outside thereof,
> namely five (5) kilograms or more of a mixture or substance containing a
> detectable amount of cocaine, . . . and fifty (50) grams or more of a mixture or
> substance containing a detectable amount of cocaine base . . . .

App. 53.

[2]     Count I of the Redball II indictment charged:

> Beginning from a time unknown, but no later than 1999, and continuing until
> October 2005, at St. Thomas in the District of the Virgin Islands and elsewhere,
> defendants Gelean Mark, Walter Ells, Vernon Fagan . . . and Dorian Swan, did
> knowingly and intentionally, combine, conspire, confederate, and agree together
> with each other and with diverse other parties known and unknown, . . . to
> knowingly and intentionally possess with intent to distribute a controlled
> substance, namely five (5) kilograms or more of a mixture and substance
> containing a detectable amount of cocaine . . . .

App. 60-61. Count II of the Redball II indictment charged:

> Beginning from a time unknown, but no later than 1999, and continuing until
> October 2005, at St. Thomas in the District of the Virgin Islands and elsewhere,
> defendants, Gelean Mark, Walter Ells, and Vernon Fagan, did knowingly and
> intentionally conspire, confederate, and agree with each other and with other

3

The jury trial in Redball I began on March 5, 2007 and ended in a mistrial on March 27, 2007 due to a deadlocked jury. The jury trial in Redball II began on September 5, 2007. The jury returned a partial verdict of guilty with respect to Mark and co-defendant Henry Freeman on Count I of the Redball II indictment, and the trial judge declared a mistrial on the remaining Redball II counts and defendants on October 1, 2007. On January 28, 2008, Mark filed a motion to dismiss Counts I and XVIII of the Redball I indictment, contending that, given his conviction on Count I in Redball II, reprosecution of the conspiracy counts in the Redball I indictment would violate his double jeopardy rights. The District Court denied his motion, and this appeal followed. We have jurisdiction to review this appeal pursuant to 28 U.S.C. § 1291 and the collateral order doctrine. See Abney v. United States, 431 U.S. 651, 659 (1977); United States v. Venable, 585 F.2d 71, 74 (3d Cir. 1978). "Our review of double jeopardy challenges is plenary." United States v. Smith, 82 F.3d 1261, 1265 (3d Cir. 1996).

II.

In this appeal, we must decide whether Mark's conspiracy conviction in Redball II bars retrial in Redball I under the double jeopardy clause. See U.S. Const. amend. V, cl. 2. A defendant moving to dismiss an indictment on double jeopardy grounds bears the

persons known and unknown . . . to import into the United States from a place outside thereof, namely Tortola, British Virgin Islands, controlled substances, namely five kilograms and more of a mixture and substance containing a detectable amount of cocaine . . . .

App. 66.

4

evidentiary burden of going forward by putting his double jeopardy claim in issue. If the defendant presents a non-frivolous showing of double jeopardy, he is entitled to a pre-trial evidentiary hearing to determine the merits of his claim. Once the defendant has established his prima facie case, the burden of persuasion shifts to the Government to prove by a preponderance of the evidence that the two indictments charge the defendant with legally distinct crimes. See Smith, 82 F.3d at 1266.

The double jeopardy clause prevents the Government from splitting one conspiracy into multiple prosecutions. See Braverman v. United States, 317 U.S. 49, 63 (1942). Generally, the same evidence test is utilized to determine whether a second prosecution is barred. Blockburger v. United States, 284 U.S. 299 (1932) (holding that test for whether two offenses are not the same is whether each offense requires proof of a fact that the other does not). When the charge involves a conspiracy, however, this Court applies a "totality of the circumstances" test as established in United States v. Liotard, 817 F.2d 1074, 1078 (3d Cir. 1987). This is because "successive indictments against a single defendant for participation in a single conspiracy might withstand same evidence scrutiny if the court places undue emphasis upon the evidence used to prove the commission of the overt acts alleged," id. at 1078, and with a conspiracy, "it is the agreement which constitutes the crime, not the overt acts." Id. (quoting United States v. Young, 503 F.2d 1072, 1076 (3d Cir. 1974)). The "ultimate inquiry presented by conspiracy double jeopardy claims is whether there are two agreements or only one."

Smith, 82 F.3d at 1267.  See also United States v. Becker, 892 F.2d 265, 268 (3d Cir. 1989) ("The critical determination is whether one agreement existed.")

In order to determine whether one or more agreements existed, Liotard's totality of the circumstances test instructs us to examine four factors: (1) the "locus criminis" of the alleged conspiracies[3]; (2) the degree of temporal overlap between the conspiracies; (3) the overlap of personnel between the conspiracies, including unindicted co-conspirators; and (4) the similarity in the overt acts charged and role played by the defendant in each indictment.  Liotard, 817 F.2d at 1077.  These factors should not be rigidly applied, as "different conspiracies may warrant emphasizing different factors."  Smith, 82 F.3d at 1267.  The goal is to determine "whether the overt acts alleged in the first conspiracy charge were carried out in furtherance of the broad agreement alleged in the second indictment or whether these acts were carried out in furtherance of a different agreement."  Liotard, 817 F.2d at 1078 (quotation and citation omitted).

## III.

Mark is correct in his assertion that there is significant overlap in the locations, time periods, and participants in the two conspiracies alleged in this case.  However, we find it determinative that the conspiracies had different objectives.  As the District Court concluded, the conspiracy alleged in Redball I aimed "to possess large quantities of cocaine, crack, and marijuana with intent to distribute the drugs on the streets of St.

---

[3]    "'Locus criminis' is defined very simply as the 'locality of a crime; the place where a crime was committed.'"  Smith, 82 F.3d at 1268 (citation omitted).

Thomas for financial gain," App. 17, while the goal of the conspiracy alleged in Redball II was "to possess large quantities of cocaine for distribution in New York and North Carolina for financial gain." Id. at 18. In Becker, this Court compared a conspiracy to grow and distribute marijuana with a conspiracy to smuggle and distribute foreign-grown marijuana. The defendant in Becker was convicted in Pennsylvania of conspiracy to possess with intent to distribute marijuana in Pennsylvania, New Jersey, and Massachusetts. He argued that a prior conviction in West Virginia for conspiracy to manufacture and distribute marijuana barred the Pennsylvania conviction. The time periods alleged in the two indictments overlapped, but this Court found it crucial that while the object of the West Virginia conspiracy had been to manufacture and possess with intent to distribute, the Pennsylvania indictment charged that the objects of that conspiracy were to smuggle, store, and distribute marijuana. Consequently, "[t]hese were two different objectives" and "hence two conspiracies." 892 F.2d at 268. Likewise, the substantive objectives of the two conspiracies here are distinct and reveal two agreements. Redball I alleged a conspiracy involving a street-level operation in St. Thomas distributing cocaine, crack cocaine, and marijuana, while Redball II alleged a conspiracy to import cocaine from the British Virgin Islands for subsequent distribution in the continental United States. See also United States v. Chiattello, 804 F.2d 415 (7th Cir. 1986) (holding that two conspiracies existed where the first indictment was for a conspiracy to buy marijuana in Mississippi and the second indictment involved a scheme

7

to smuggle marijuana from Colombia and distribute it in Indiana).  Accordingly, Mark has not made the requisite double jeopardy showing and may be retried in Redball I.

IV.

For the foregoing reasons, we will affirm the decision of the District Court.