**UNITED STATES of America**

v.

**Sherman KEMP, Appellant.**

No. 09–3196.

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
LAR 34.1(a) Dec. 16, 2009.

Filed: Jan. 6, 2010.

Maureen McCartney, Esq., James R. Pavlock, Esq., Linwood C. Wright, Jr., Esq., Office of United States Attorney, Philadelphia, PA, for United States of America.

Paul M. George, Esq., McKinney & George, Philadelphia, PA, for Appellant.

Before: SCIRICA, Chief Judge, BARRY and SMITH, Circuit Judges.

OPINION OF THE COURT

SCIRICA, Chief Judge.

On January 23, 2008, a federal grand jury in the Eastern District of Pennsylvania returned a superseding indictment charging Sherman Kemp and ten others with, *inter alia,* conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. Kemp filed a motion to dismiss the indictment on double jeopardy grounds. The United States District Court for the Eastern District of Pennsylvania issued an order on July 20, 2009 denying the motion without conducting an evidentiary hearing.

Kemp appeals the District Court's order. We will affirm.

## I.

The issue presented involves two federal indictments. The first indictment (the "Maryland indictment"), returned in the District of Maryland on June 28, 2007, contained four counts: Count One charged Kemp and one co-defendant, Isaac Gomez, with conspiracy to distribute cocaine and possession with intent to distribute, in violation of 21 U.S.C. § 846; Count Two charged Kemp with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); Count Three charged Kemp with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and Count Four charged Kemp with possession of 500 grams or more of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Kemp pled guilty to all four counts on July 17, 2008, and was sentenced to fifteen years imprisonment.

The factual basis of Counts One and Four are relevant to this appeal. Count One charged Kemp and Gomez with conspiring to distribute cocaine "in the District of Maryland and elsewhere" from March 2007 through about June 2007. According to the plea agreement, Kemp would travel to New York City to purchase kilograms of cocaine from Gomez, which Kemp then sold to lower-level dealers in Baltimore. Count Four charged Kemp with only the substantive crime of possession with intent to distribute on or about September 11, 2002. The plea agreement stated that Kemp was attempting to deliver cocaine in Baltimore on this date. After Kemp parked his car at 3332 Kenyon Avenue, a location in the city where he stored cocaine, law enforcement officers attempted to arrest him. Kemp eluded arrest and eventually escaped. The police

subsequently executed a search warrant at this address and recovered over 3000 grams of cocaine and a scale used for weighing cocaine. As noted, Kemp pled guilty to all counts, including Counts One and Four.

The second indictment (the "Pennsylvania indictment") was issued by a grand jury in the Eastern District of Pennsylvania on January 23, 2008. Count One—the only count of the fifteen-count indictment with which Kemp was charged—alleged that Kemp and ten co-defendants conspired to distribute cocaine from about 1998 through about 2007. According to the indictment, the co-defendants were part of a multi-million dollar cocaine distribution organization based throughout the Philadelphia metropolitan area, New Jersey, and Maryland. The organization, called the Phillips Cocaine Organization (the "PCO"), was founded and led by Maurice Phillips. The indictment alleged that Kemp joined the conspiracy in 1999 and became a leader of the PCO, eventually reporting directly to Phillips. Kemp's aforementioned cocaine possession on September 11, 2002, which was the basis of Count Four in the Maryland indictment, was among more than one hundred overt acts listed in the Pennsylvania indictment and allegedly committed in furtherance of the conspiracy.

Kemp filed a motion to dismiss the Pennsylvania indictment on double jeopardy grounds, contending that the conspiracy charged was in law and in fact the same offense as the conspiracy charged in Count One of the Maryland indictment. On July 15, 2009, the District Court denied Kemp's motion without conducting an evidentiary hearing. In a footnote to its order, the court cited *United States v. Liotard,* 817 F.2d 1074 (3d Cir.1987). Kemp filed a

timely Notice of Appeal.[1]

## II.

■ The Double Jeopardy Clause guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Double jeopardy attaches when it is "shown that the two offenses charged are in law and in fact the same offense." *United States v. Felton*, 753 F.2d 276, 278 (3d Cir.1985) (citing *United States v. Ewell*, 383 U.S. 116, 124, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966)). A defendant is entitled to a pre-trial evidentiary hearing if he makes a non-frivolous showing of double jeopardy. *Liotard*, 817 F.2d at 1077. Once a defendant makes this showing, "the burden of persuasion shifts to the government to prove by a preponderance of the evidence that the two indictments charge the defendant with legally separate crimes." *Id.* (citing *Felton*, 753 F.2d at 278).

To ensure a defendant's constitutional right against double jeopardy is adequately protected in the context of successive conspiracy prosecutions, we apply a "totality of the circumstances" test in which we consider (1) the "locus criminis" (location) of the two alleged conspiracies; (2) the degree of temporal overlap between the conspiracies; (3) the overlap of personnel between the conspiracies, including unindicted co-conspirators; and (4) the similarity in the overt acts charged and the role played by the defendant in each indictment. *United States v. Smith*, 82 F.3d 1261, 1267 (3d Cir.1996) (citing *Liotard*, 817 F.2d at 1078). We have not applied

these factors rigidly, *id.*, focusing instead on the overarching inquiry of "whether two groups of conspirators alleged by the government to have entered separate agreements are actually all committed to the same set of objectives in a single conspiracy." *Id.* at 1271.

Kemp argues he has made a non-frivolous showing with respect to each factor of the *Liotard* test. Specifically, he contends that both indictments accused him of conspiring to distribute cocaine in Maryland in 2007, which meets the first and second factors, and they both averred he possessed cocaine and eluded police on September 11, 2002, which meets the fourth factor. With respect to the third factor, Kemp argues he was precluded from demonstrating an overlap of personnel between the two conspiracies because the court did not conduct an evidentiary hearing. In contrast, the government claims the two conspiracies charged were vastly different—besides the slight temporal overlap and the fact that the two indictments referred to Kemp's cocaine possession on September 11, 2002, the conspiracies were unrelated. We agree.

First, although Kemp's alleged involvement in both conspiracies was centered in Baltimore, the scope of the conspiracies differed significantly. The Pennsylvania indictment alleged that the conspiracy involved multiple locations throughout the East Coast, while the Maryland conspiracy involved only New York City and Baltimore.

Similarly, the slight temporal overlap between the conspiracies does not provide

---

1. The District Court had jurisdiction under 18 U.S.C. § 3231. A pretrial order denying a motion to dismiss an indictment on double jeopardy grounds is within the "collateral order" exception to the final order requirement. *Abney v. United States*, 431 U.S. 651, 659, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *United States v. Smith*, 82 F.3d 1261, 1265 (3d Cir. 1996). Accordingly, we have jurisdiction under 28 U.S.C. § 1291. Our review of double jeopardy challenges is plenary. *Smith*, 82 F.3d at 1265 (citing *United States v. Ciancaglini*, 858 F.2d 923, 926 (3d Cir.1988)).

much support under the second *Liotard* factor. The Pennsylvania conspiracy allegedly spanned from 1998 through 2007, with Kemp's involvement beginning in 1999. The Maryland conspiracy, however, ran only from March 2007 through about June 2007.

Third, Kemp's argument that he was unable to show an overlap of personnel between the conspiracies because the District Court did not conduct an evidentiary hearing is unavailing. The factual basis of Kemp's guilty plea to the Maryland charges demonstrates that he purchased cocaine from Gomez in New York and supplied it to dealers in Baltimore. Although there were unindicted co-conspirators, Kemp's plea agreement shows that they were limited to lower-level dealers in the Baltimore area. In contrast, the Pennsylvania indictment charged Kemp and ten co-defendants with conspiring with each other and numerous unindicted co-conspirators. Gomez was not charged in the Pennsylvania indictment, and there is no evidence that he was involved in any of the more than one hundred alleged overt acts. Because Kemp has not pointed to anything in the record showing an overlap of membership between the conspiracies, he is not entitled to an evidentiary hearing simply by claiming he would present the evidence at that time.

Finally, Kemp has failed to present evidence that the overt acts and the alleged role he played in each conspiracy were similar. Although both conspiracies were based on the distribution of cocaine, there were no overlapping overt acts in the indictments. Kemp's reference to the September 11, 2002 incident is inapposite. The Maryland indictment charged Kemp with the substantive crime of possession with intent to distribute based on this incident, while the Pennsylvania indictment simply used Kemp's admitted conduct on this date as one of many overt acts in furtherance of the alleged conspiracy. Moreover, the Pennsylvania indictment alleged that Kemp was a leader of the PCO and managed drug trafficking in the Baltimore area, while the factual basis of Kemp's guilty plea in the Maryland case stated that he served only as a middleman between Gomez, a New York supplier, and lower-level dealers in Baltimore.

### III.

For the foregoing reasons, Kemp has failed to make a non-frivolous showing of double jeopardy. Accordingly, we will affirm the judgment of the District Court.