NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

Nos. 14-3122 & 15-1039

———————————

UNITED STATES OF AMERICA

v.

ELIYAHU WEINSTEIN,
Appellant

———————————

Appeal from the United States District Court
for the District of New Jersey
(D.N.J. Nos. 3-11-cr-00701-001 & 3-14-cr-00219-001)
District Judge: Honorable Joel A. Pisano

———————————

Argued April 19, 2016

Before: McKEE, Chief Judge, AMBRO, and RESTREPO, Circuit Judges

(Filed: August 12, 2016)

Eric M. Creizman
Creizman LLC
565 Fifth Avenue, 7th Floor
New York, NY   10017

Richard A. Greenberg
Steven Y. Yurowitz [Argued]
William J. Dobie
Newman & Greenberg
950 Third Avenue, 32nd Floor
New York, NY   10022
        Counsel for Appellant

Paul J. Fishman
    United States Attorney
Mark E. Coyne                (Argued)
    Assistant U.S. Attorney
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ   07102
        *Counsel for Appellee*

_____

OPINION[*]

_____

AMBRO, Circuit Judge

Eliyahu Weinstein pleaded guilty in two cases now consolidated before us on appeal. In the first ("*Weinstein I*") he admitted to operating a Ponzi scheme from 2004-2011 whereby he misappropriated hundreds of millions of dollars that victims thought they were investing in specific real estate transactions. In the second ("*Weinstein II*") he admitted to engaging in similar conduct from 2012-2013.

Weinstein tried unsuccessfully to withdraw his *Weinstein I* guilty plea, claiming (1) the District Court participated in plea negotiations in violation of Federal Rule of Civil Procedure 11, and (2) his attorneys rendered ineffective assistance of counsel because they were actually conflicted when they encouraged him to plead guilty. He also tried unsuccessfully to have *Weinstein II* dismissed as a breach of the *Weinstein I* plea agreement and a Double Jeopardy violation. Those unsuccessful attempts are the basis of his current appeals. For the reasons that follow, we affirm.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

## I. Background

The *Weinstein I* indictment alleges that Weinstein defrauded multiple victims from 2004 to 2011. He convinced one victim, Morris Rotenstein, to invest in an insurance transaction, but then used for unauthorized purposes the money the latter invested. Rotenstein later told the FBI that he decided to invest with Weinstein based in part on assurances from Mark Harris, Weinstein's attorney from the law firm Proskauer Rose LLP, that the investment was above board.

Plea negotiations began in November 2012. After the District Court denied Weinstein's pretrial motions in December 2012, counsel for the prosecution and defense met with Judge Pisano in his chambers. According to Weinstein, his lawyers reported that the conversation focused on plea negotiations and that Judge Pisano gave assurances he would "remember" the Government's past plea offers during sentencing if Weinstein pleaded guilty and made restitution. J.A. 149. Weinstein also claims his counsel said that Judge Pisano warned he had never had an acquittal in his courtroom. There is no direct evidence of what was said during that off-the-record meeting, and Judge Pisano denied Weinstein's second-hand account of the exchange.

The parties failed to reach an agreement despite continuing plea negotiations. Later in December, attorneys from Proskauer (including Harris) joined Weinstein's criminal defense team. They reviewed the case to prepare for trial but ultimately recommended that Weinstein plead guilty. He did not do so until January 2013 when, according to him, Robert Cleary, one of his attorneys from Proskauer, reported that Judge Pisano said during an *ex parte* phone call that "all doors [would] be open" if Weinstein

3

were to plead guilty and make restitution but "all doors [would] be closed" if he were convicted after a trial. J.A. 150. The only direct evidence of what Judge Pisano allegedly said *ex parte* on the phone is Cleary's unsigned affidavit, which differs from Weinstein's second-hand version of events and says (among other things) that the Judge "never articulated any preference for how the case should proceed or be resolved." J.A. 247. Judge Pisano denied making the remarks Weinstein attributed to him.

Weinstein then signed a plea agreement providing for a possible sentence of restitution and anywhere from 0-300 months' imprisonment. As part of the plea agreement, the Government pledged not to file further charges against Weinstein "for his conduct, now known to the Government," from June 2004 through January 3, 2013, the date of his guilty plea. J.A. 97.

Nearly five months after he pleaded guilty in *Weinstein I*, Weinstein was arrested in *Weinstein II* on a new complaint charging him with additional Ponzi-scheme-related offenses. The complaint alleged, among other things, that Weinstein had violated the conditions of his bail from *Weinstein I*, which prohibited him from completing any financial transactions worth more than $1,000 without advance notice to and approval from a special counsel.

After the complaint in *Weinstein II* was issued, Weinstein moved three times to withdraw his *Weinstein I* guilty plea, primarily citing two grounds for withdrawal: that Judge Pisano participated in plea negotiations in violation of Federal Rule of Criminal Procedure 11; and that the Proskauer attorneys rendered ineffective assistance because they had conflicts of interest. As proof of a Rule 11 violation, Weinstein presented

4

Cleary's unsigned affidavit and numerous declarations containing second-hand descriptions of Judge Pisano's alleged participation in plea negotiations. As to the ineffective-assistance claim, Weinstein argued that Harris was likely to face criminal liability or be called as a prosecution witness because of his involvement in the Rotenstein transaction, so he could not have provided effective representation to Weinstein during plea negotiations.

Judge Pisano denied Weinstein's motions, citing insufficient proof of a Rule 11 violation and concluding that defense counsel was not actually conflicted. He sentenced Weinstein to 22 years' imprisonment in *Weinstein I*.

Then, in April 2014, *Weinstein II* proceeded to indictment. It alleged that Weinstein committed additional Ponzi-scheme-related offenses from 2012 to 2013. The scheme involved, among other things, fraudulent representations related to supposed investments in pre-IPO Facebook shares and real estate. Weinstein entered a conditional guilty plea that allowed him to move to dismiss the *Weinstein II* indictment and appeal any adverse ruling on that motion. He sought dismissal on the grounds that the *Weinstein I* plea agreement barred the Government from prosecuting him in *Weinstein II* and that *Weinstein II* violated the Double Jeopardy Clause of the U.S. Constitution. The District Court declined to dismiss the *Weinstein II* indictment and sentenced Weinstein to 135 months' imprisonment, only 24 months of which would run consecutive to the sentence in *Weinstein I*.

Weinstein now appeals the District Court's refusal to allow for the withdrawal of his *Weinstein I* guilty plea and its refusal to dismiss the *Weinstein II* indictment.

5

## II.  Standard of Review

We review the denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Siddons*, 660 F.3d 699, 703 (3d Cir. 2011). In so doing, we review the District Court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001). Similarly, "when reviewing a motion to dismiss an indictment, our standard of review is mixed." *United States v. Shenandoah*, 595 F.3d 151, 156 (3d Cir. 2010). "We exercise plenary review over the District Court's legal conclusions and review any challenges to its factual findings for clear error." *United States v. Huet*, 665 F.3d 588, 594 (3d Cir. 2012).

## III.  Discussion

### A.  The Motion to Withdraw the *Weinstein I* Guilty Plea

"Once a court accepts a defendant's guilty plea, the defendant is not entitled to withdraw that plea simply at his whim." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003). Rather, he bears the "substantial" burden of "showing a 'fair and just reason' for the withdrawal of his plea" prior to sentencing. *United States v. King*, 604 F.3d 125, 139 (3d Cir. 2010) (quoting Fed. R. Crim. P. 11(d)(2)(B)). To determine whether he has met that burden, "district courts consider whether: (1) [he] 'asserts his innocence;' (2) [he] proffered strong reasons justifying the withdrawal; and (3) the government would be prejudiced by the withdrawal." *Id.*

Weinstein has neither "meaningfully reasserted his innocence," *Jones*, 336 F.3d at 252-53, nor demonstrated that the withdrawal would not prejudice the Government, *see id.* at 255. Nonetheless he contends there are two compelling reasons justifying the

6

withdrawal of his guilty plea: (1) Judge Pisano violated Rule 11 by participating in plea negotiations, and (2) his attorneys were conflicted and therefore rendered ineffective assistance.

We conclude that Judge Pisano did not abuse his discretion in ruling that Weinstein had not made the substantial showing necessary to warrant the withdrawal of his guilty plea. Though Rule 11(c)(1) establishes a "bright line" prohibiting the court from participating in plea discussions, *see United States v. Ebel*, 299 F.3d 187, 191 (3d Cir. 2002), the evidence that Judge Pisano actually crossed that line falls short.[1] Weinstein claims Judge Pisano violated Rule 11 on two occasions: when he spoke with both sides' counsel in chambers and when he had an *ex parte* phone call with Cleary. But the record support for Weinstein's assertions is wanting. Weinstein cites only unsubstantiated hearsay to support his claims. Initially this hearsay appeared only in his self-serving declaration, which was riddled with minor inaccuracies. *See* Gov't Br. at 23. Later it appeared in the declarations and affidavits of his attorneys and his spiritual adviser (one of which was unsigned), but even those statements are not enough for Weinstein to meet his "substantial" burden. First of all, that Weinstein could have presented those statements to the District Court earlier suggests they are *post hoc* attempts to bolster his position. Moreover, two of the declarations contain only *double* hearsay (*i.e.*, they relay what Harris and Cleary allegedly said that Judge Pisano allegedly said to others), J.A. 184, 244-45, and Cleary's affidavit is entitled to no weight because it

---

[1] We reject Weinstein's argument that Judge Pisano should not have been the one to rule on the Rule 11 motion because it lacks any support in our case law.

is merely an unsigned draft affidavit, J.A. 246. (We also note that even if we were to give weight to the Cleary affidavit, the comments it attributes to Judge Pisano do not indicate a Rule 11 violation. *See United States v. Frank*, 36 F.3d 898, 903 (9th Cir. 1994) (explaining that Rule 11(c)(1) "does not establish a series of traps for imperfectly articulated oral remarks"). Finally, though it is not dispositive, Judge Pisano repeatedly denied making any of the problematic statements attributed to him, and Weinstein stated under oath at his plea hearing that he was not induced to plead guilty and that no one had made any promises to him other than what appeared in the plea agreement.[2] Thus the record lacks any credible evidence to substantiate the alleged Rule 11 violation, and it was not an abuse of discretion to deny Weinstein's requests to withdraw his *Weinstein I* guilty plea.

Second, Weinstein argues that defense counsel was ineffective because the Proskauer attorneys were operating under an actual conflict of interest. An attorney is actually conflicted if, in connection with his representation of a client, he is very likely to face criminal charges or be a witness for the prosecution. *See Gov't of the Virgin Islands v. Zepp*, 748 F.2d 125 (3d Cir. 1984). And representation by an actually conflicted attorney is ineffective and violates the Sixth Amendment without any need to show prejudice. *See Mickens v. Taylor*, 535 U.S. 162, 166 (2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

---

[2] In the alternative, Weinstein argues in a footnote that he is entitled to withdraw his guilty plea because his attorneys lied about Judge Pisano's *ex parte* remarks. But "arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997).

According to Weinstein, because Rotenstein relied on Harris's comments when he decided to invest with Weinstein, Harris "faced potential criminal liability for aiding and abetting . . . [,] and his independent personal knowledge of the circumstances of the charges made him a [likely] witness for the prosecution." *United States v. Morena*, 547 F.3d 191, 198 (3d Cir. 2008). But Weinstein mischaracterizes Harris's situation. The latter's representations to Rotenstein were not false (let alone criminal) because the insurance transaction would have been legitimate had Weinstein not misappropriated the investment. With no evidence to suggest that Harris assisted in the misappropriation, he did not face potential criminal liability. Nor was Harris likely to be a witness for the prosecution. The Government could have proven that Weinstein defrauded Rotenstein with testimony from Rotenstein and a summary witness describing what Weinstein did with the investment; Harris's testimony was not needed.

Weinstein compares this case to *Government of the Virgin Islands v. Zepp*, where defense counsel could not represent his client without putting himself at risk of criminal charges, and a damning stipulation from defense counsel was actually used to convict the defendant. *See* 748 F.2d at 137-39. But Harris was not at risk of criminal liability for his actions, and there is no reason to think that he would have been a prosecution witness in this case. Thus defense counsel was not actually conflicted and the District Court did not abuse its discretion when it ruled that Weinstein could not withdraw his *Weinstein I* guilty plea on the ground that his counsel had been ineffective.

B.  The Motions to Dismiss the *Weinstein II* Indictment

Weinstein next appeals the District Court's refusal to dismiss the *Weinstein II* indictment. He first argues that the *Weinstein I* plea agreement—which prohibits the Government from initiating "any further criminal charges against Eliyahu Weinstein for his conduct, now known to the Government, from in or about June 2004" through the date of his guilty plea (January 3, 2013), J.A. 97—bars the Government from bringing criminal charges against him for any financial fraud he may have committed before he pleaded guilty, including the frauds alleged in the *Weinstein II* indictment. According to Weinstein, the "conduct" referred to in the *Weinstein I* plea agreement encompasses any crimes committed using the *modus operandi* he employed to commit the crimes charged in *Weinstein I* and would include the criminal acts at issue in *Weinstein II*.

To say we disagree requires little thought beyond the text. "Plea agreements, although arising in a criminal context, are analyzed under contract law standards." *United States v. Nolan-Cooper*, 155 F.3d 221, 236 (3d Cir. 1998). And under those standards the plain meaning of the agreement controls. *See United States v. Davenport*, 775 F.3d 605, 609 (3d Cir. 2015). Here the word "conduct" plainly refers to any acts or omissions by Weinstein. The agreement bars the Government only from charging Weinstein in connection with specific criminal acts of which it was aware at the time he pleaded guilty; it does not immunize him from prosecution when (as in *Weinstein II*) the Government later learns of a criminal act he committed before pleading guilty, even if the newly discovered act resembled the crimes to which he pleaded guilty. In context, it would be absurd to say that "conduct" refers to a type of crime and not a criminal act.

Weinstein then argues that the charges in *Weinstein II* duplicate the charges in *Weinstein I* and therefore violate the Double Jeopardy Clause, which "prohibits successive prosecution or multiple punishment for" the same offense. *Witte v. United States*, 515 U.S. 389, 391 (1995). True enough, the District Court evaluated Weinstein's Double Jeopardy challenge using the test from *Blockburger v. United States*, 284 U.S. 299 (1932), and that was incorrect. *Blockburger* applies where the issue is "whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment." *Brown v. Ohio*, 432 U.S. 161, 166 (1977). Where, as here, the issue is whether the Government has improperly divided a single conspiracy into multiple conspiracies, the "totality of the circumstances" test from *United States v. Liotard*, 817 F.2d 1074, 1078 (3d Cir. 1987), controls. *See United States v. Rigas*, 605 F.3d 194, 212 (3d Cir. 2010).

But that misstatement was harmless. Under *Liotard* we consider factors like "the '*locus criminis*' of the alleged conspiracies [(*i.e.*, where the crime was committed)]"; "the degree of temporal overlap between the conspiracies"; "the overlap of personnel between the conspiracies"; and "the similarity in the overt acts charged and role played by the defendant in each indictment." *United States v. Smith*, 82 F.3d 1261, 1267 (3d Cir. 1996). Here they indicate there was no Double Jeopardy violation because the *Weinstein I* and *Weinstein II* conspiracies involved different victims in different locations, different time periods, different co-conspirators, and different schemes.

\* \* \* \* \* \*

11

We have considered Weinstein's remaining arguments and find them unpersuasive. He has presented no credible evidence establishing that Judge Pisano violated Rule 11 or that Harris was actually conflicted. Nor has he presented sufficient reason to believe that *Weinstein II* breaches his *Weinstein I* plea agreement or is otherwise barred by Double Jeopardy. Thus we affirm.